"La tacite reconduction ne peut s'opérer qu'autant que le bailleur et le preneur se trouvent capables de contracter à l'expiration du premier bail fait avec fixation de durée. Si donc à cette époque l'une ou l'autre des parties contractantes était frappée d'incapacité il n'y aurait plus de tacite reconduction possible." Dalloz, under article 1738, C. N. (J. G. Louage, 537).

"Les baux des biens nationaux et des établissements public étant assujetis à certaines formalités il s'ensuit que tant que ces formalités ne sont pas observées il ne peut y avoir de bail par tacite reconduction." Id.

Tacit reconduction resting upon presumed consent, such consent will not be presumed where conditions existing at the commencement of the contract have materially changed to the prejudice of one of the contracting parties. The presumption upon which tacit reconduction is based is not a presumption "juris et de jure." We are of the opinion that, if the city had any rights flowing out of the situation, it must be based upon a "quantum meruit," not a contract. The trial judge has properly so held.

We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.

---

(49 South. 278.)

No. 17,084.

UNION SAWMILL CO. v. SUMMIT LUMBER CO.

(March 29, 1909.   Rehearing Denied May 10, 1909.)

1. SPECIFIC PERFORMANCE (§ 116½*)—CHANGING CAUSE OF ACTION—DAMAGES.

The plaintiff and the defendant entered into a contract for the purpose of adjusting their differences by amicable arbitration. A time lim it was fixed for the carrying out of the respective obligations of the parties. Each party agreed to do, and also not to do, certain things in the future. It was stipulated in the contract that in the event of a material or substantial breach of the contract the actual damages of the other party should be the sum of $10,000. The time limit fixed expired without the parties having adjusted the differences between them under the arbitration. Specific performance became impossible under the contract. The relief of the injured party was through an action for damages. The plaintiff none the less brought a suit against defendant for specific performance, reserving its right to claim damages in another suit. Defendant pleaded an exception of no cause of action. Under reservation of that exception it answered, pleading a general denial. For defense it denied that the instrument sued on evidenced a contract, as it was in violation of the statutes of the state of Missouri, where it was passed, as the plaintiff had not complied with statutory requirements authorizing foreign corporations to do business in that state. Should that defense be not sustained, it denied that plaintiff was entitled to claim specific performance. Assuming the position of plaintiff in reconvention, it prayed for damages against the plaintiff for breach of the contract. Plaintiff filed a supplemental and amended answer, reiterating its right to a specific performance, but claiming damages in the alternative. Defendant excepted to this supplemental petition and its demands on the ground that, having originally prayed for a specific performance and reserved its right to claim damages in another suit, it could not bring a claim for damages into the existing suit, as it thereby changed its cause of action. *Held*, for reasons assigned, that this exception was not well grounded.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 375;   Dec. Dig. § 116½.*]

2. JUDGMENT RENDERED BELOW.

The district court rendered judgment in favor of the plaintiff for the amount stipulated in the contract to be paid for damages, and for a sum over and above that amount covering the price of certain timber which defendant had cut and utilized under a clause of the contract predicated upon its being consummated.

(Syllabus by the Court.)

Appeal from Fourth Judicial District Court, Parish of Union; Robert Brooks Dawkins, Judge.

Action by the Union Sawmill Company against the Summit Lumber Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Elder & Moore, Francis Marion Etheridge, Stubbs, Russell & Theus, Smead Powell, and William Hall Trigg, for appellant. Lamkin, Millsaps & Dawkins, Gaughan & Sifford, and Harvey Goodwyn Fields, for appellee.

NICHOLLS, J. The plaintiffs and the defendant are corporations engaged in the same character of business in the states of Louisiana and Arkansas. Prior to the 21st of March, 1906, there had arisen a considerable amount of friction between the two companies arising out of their business in the two states. At that date there were pending in the state and federal courts in Louisiana several suits instituted by the Union Sawmill Company against the Summit Lumber Company and against the Arkansas Southeastern Railroad Company. There were likewise other suits then pending in Union parish, La., in which both parties were concerned.

On March 21, 1906, the two companies entered into a contract for the purpose of arriving at an amicable adjustment of their differences. In that contract each party engaged to do, and also not to do, certain things in the future. The stipulations of the parties were in the contract placed under 20 different headings. Under the heading No. 14 it was declared that it was mutually agreed and understood that in the event of a material or substantial breach of the contract, or of any of its stipulations and agreements by either party (except section 6, as to which, for a breach of its stipulations, special liquidated damages were provided), the actual damages to the other party shall be the sum of $10,000. Under the heading No. 2, the Summit Lumber Company declared that for the consideration hereinbefore mentioned and that hereafter stated, and for the sum of $1 to it in hand, upon the signing or execution of this instrument, it does hereby furnish bond and obligate itself that it will bargain, grant, sell, and convey by warranty deed to the Union Sawmill Company, its successors and assigns, all the lands owned by the Summit Lumber Company, or any of its officers or stockholders, within the territory hereinafter described; also all the merchantable pine timber 10 inches in diameter at the stump and over, now owned by the Summit Lumber Company, or any of its officers or stockholders, standing on any lands within the said territory hereinafter mentioned, the fee to which lands is in other parties, " * * * for which said lands and timber as a final payment therefor the Union Sawmill Company shall pay to the Summit Lumber Company the sum of $3 per thousand feet according to the estimates (for which provision is hereinafter made) for all the merchantable pine timber 10 inches in diameter at the stump and over, standing and growing on said lands, subject to the condition that no pine timber known as 'old field' pine shall be included in the estimate to be made, except where such timber is equal in quality to virgin trees, and tributary to a virgin tract, nor shall any timber on lands commonly know as 'cut lands,' or partially cut lands, or lands situated in a territory heretofore cut over, be included in the estimate to be made as hereinafter provided, except as the Union Sawmill Company may desire it to be done; provided, further, that no timber shall be included in said estimates for which. * * *"

Under the heading No. 4 it was stipulated that for the purpose of making the estimates hereinbefore mentioned it is hereby agreed that the same should be made jointly by P. W. Seaman, on the part of the Union Sawmill Company, and by W. H. Fields on the part of the Summit Lumber Company, and such assistants as they may secure to go in pairs, one of each; and in the event said Seaman and said Fields shall differ and not be able to agree on any matters of estimate on any tracts of timber they shall call in A. W. Washburn, of Bastrop, La., whose decision

therein shall be final, and in the event the said A. W. Washburn should fail or refuse to act in said capacity, then McWilliams, of El Dorado, Ark., shall be substituted in his place, with the same powers and effect as herein given to said Washburn; the costs and expenses of the said Seaman to be borne by the Union Sawmill Company, and the costs and expenses of the said Fields to be borne by the Summit Lumber Company; the costs and expenses of the said Seaman and McWilliams as the case may be, and of any assistants called in by the said Seaman and Fields, to be borne by the said lumber company and Union Sawmill Company, share and share alike. Should any estimator employed by either the said Seaman or the said Fields be objectionable to the other, his services shall be dispensed with at once, and an acceptable man employed in his place.

Under the heading No. 11, the Union Sawmill Company bound and obligated itself to sell and convey at and for the price of $3 per thousand feet, estimates to be made in the manner hereinbefore provided, all the merchantable pine timber 10 inches in diameter and over at the stump, standing and growing, which it owned along and tributary to the road of the Arkansas Southeastern Railroad, extending west from the Little Loutre creek to the Big Loutre creek, being described as follows, to wit:

"Known as the McCormick, Harrison, and Futch tracts owned by the Union Sawmill Company, which amount shall be credited upon the final amount to be paid under this contract by the Union Sawmill Company to the Summit Lumber Company upon a settlement between them, which timber shall be cut and removed by the Summit Company within six months from date, and all such timber remaining on said lands at the expiration of that time shall revert to and become the property of the Union Sawmill Company."

Under the heading No. 15, it was declared that it was particularly agreed and understood that all the stipulations herein made and provided for shall be executed and completed without delay, and particularly on or before the 30th day of June, 1906, time to this extent being a part of the essence of the contract, at the end of which time, if all the stipulations and agreements hereinbefore mentioned to be done and executed by the Summit Lumber Company shall not have been completed, or if the said lumber company shall fail to perform in any material point, or shall violate any of said stipulations before that time, the certified check for $50,000, hereinbefore mentioned as being placed with the Fourth National Bank of St. Louis, Mo., shall be at once returned to the Union Sawmill Company.

On the 4th of November, 1906, the Union Sawmill Company brought suit in the district court in and for Union parish, La., annexing to its petition a copy of the contract of March, 1906, in which it averred that it had in every particular performed the obligations of said contract, except in such matters as the Summit Lumber Company had prevented it from doing, and that it had made repeated demands upon the Summit Lumber Company to carry out and perform what it had assumed thereunder, but without avail. Plaintiff then set out in its petition various matters wherein the defendant had failed to carry out and had violated its obligations under the contract. Among allegations, it averred:

"That in said contract it was provided that the estimate of the said timber sold as aforesaid by the defendant to petitioner should be made jointly by P. W. Seaman for the Union Sawmill Company and W. H. Fields for the Summit Lumber Company, and such assistants as they might engage to aid them, said assistants to work in pairs."

And it was further stipulated:

"That no assistants should be employed by either the said Seaman or the said Fields who might be or might become objectionable to the other. That said assistants employed as aforesaid, working in pairs, without objection from either the said Seaman or the said Fields, estimated all said timber upon the lands claimed to be owned by the defendant company, and from

time to time submitted their estimates as agreed upon to the said Seaman and the said Fields. That said estimates were agreed upon by said assistants except in case of fourteen forties estimated by the assistants Bynum and Bell, a list of said fourteen forties being attached to its petition, and the estimates of each of said assistants being set opposite each tract. That after said estimates had been completed the defendant failed to furnish any list of the estimates with which the said Fields was dissatisfied for a long time after they had been completed and agreed upon and not until the 20th of June, 1906, when objection was made by the said defendant through the said Fields to the estimates upon about 16,000 acres of land. That at said time it was not possible for the said Seaman and said Fields to personally examine those lands before the 30th of June, 1906, but that the said Seaman offered to the said Fields that they should personally estimate the timber on the lands embraced in the list objected to by the said Fields, and requested the said Fields to O. K. and approve all of the estimates, to which he had no objection and offered and proposed to re-estimate jointly with the said Fields in person those to which objection was made and the said Fields declined so to do.

"That after the 30th of June, 1906, petitioner waiving the expiration of the time stipulated in the said contract agreed that the said estimates should be completed by the said Fields and the said Seaman as provided in said contract, and the defendant refused and declined so to do and the said defendant declined to permit Washburn, the arbitrator named in said contract, to arbitrate the difference between the said Seaman and the said Fields as to the estimates upon certain of the tracts of land and timber which had arisen between the said Fields and the said Seaman. And now petitioner alleges that in equity and in good conscience the defendant is estopped to deny the correctness of said estimates agreed upon by said assistants, and petitioner, in order to prevent any differences, agrees to accept the higher estimates made on the fourteen forties above set out, upon which said assistant estimators failed to agree. That said contract has been partially performed and said parties thereto cannot be returned to their position and rights had and held by them before the execution of said contract. The Summit Lumber Company has cut and removed and manufactured the timber given in part payment and satisfaction by petitioner, avers that it did not desire to sell its timber, having prepared at great expense to manufacture the same, with other timber owned by it, and relying upon the good faith of the Summit Lumber Company to carry out said contract it had added another large sawmill to its manufacturing plant at a cost largely in excess of one hundred thousand dollars, which otherwise would not have been done, and, in addition, dismissed all the suits pending against the Summit Lumber Company and the so-called Arkansas Southeastern Railroad Company as agreed, and also allowed the latter company the use of rights of way over and across certain of its lands in the territory reserved by the defendant, and in order to carry out its obligations assumed in said contract of date March 12, 1896, with reference to the suits pending in Union county, Arkansas, against said Summit Lumber Company instituted by Marsh & Flennigan, the plaintiff paid to the said Marsh & Flennigan the sum of three thousand seven hundred and fifty dollars; and further plaintiff avers that while the defendant company failed to carry out its obligation to the plaintiff company with reference to the forty-eight cases pending in the chancery court of Union county, Arkansas, wherein was involved the timber on certain tracts described in said contract as the 'Harrison and Stevenson options,' in that it failed to have decrees rendered in said court in favor of the plaintiff company, decrees having already been rendered in said causes in favor of the defendant company, and the term of court having expired, notwithstanding as a part performance of this contract the defendant company requested the plaintiff to perfect the title in itself to all of the timber involved in said litigation, assuring the plaintiff that its contract to convey said timber, together with all other timber covered by said contract, would be carried out, caused the said plaintiffs to pay out the sum of six thousand five hundred dollars in settling with the original owners for said timber exclusive of the cost and expense of abstracting and perfecting said titles to the lands and timber embraced in said contract, and which aforesaid sum, together with the amount paid to Marsh & Flennigan, were expended by petitioner in carrying out its obligations, and in compliance with the request of the said Summit Lumber Company. That in addition to the payment of the aforesaid sum, at the solicitation and instance of the Summit Lumber Company and in performance of the contract, petitioner has been compelled to expend seven hundred and fifty dollars as expenses in abstracting the titles to the lands and timber embraced in said contract by reason of the defendant's failure to furnish the same within the time and manner agreed and stipulated, and for which sum plaintiff is entitled to recover judgment against the Summit Lumber Company, defendant herein. Petitioner avers that while it has refrained from purchasing any timber or lands in the territory reserved by the Summit Lumber Company, and in accordance with the contract, the Summit Lumber Company has illegally and secretly purchased timber in the territory reserved by petitioner, in utter disregard and violation of its contract. That notwithstanding the performance and fulfillment of its contract on the part of petitioner, the Summit Lumber Company, instead of complying with its obligation under said contract, is now cutting and removing for manufacture into lumber the pine timber standing and growing upon section 7, T. 22 N., R. 1, east, and section 12, T. 22, range 1, west, situated in Union parish, Louisiana, and being a part of the timber embraced in said contract, and which the said Summit Lumber Company

obligated and bound itself to convey and deliver to petitioner; that it has cut about four and one half million feet, and which, at the contract price of three dollars per thousand feet, is well worth the sum of thirteen thousand five hundred dollars, and the Summit Lumber Company will continue to cut and remove and manufacture other timber sold to petitioner unless enjoined, prohibited, and restrained from so doing. * * *

"That the aforesaid wrongful acts of said Summit Lumber Company in violation of the contract aforesaid, if permitted to continue longer, would work petitioner an irreparable injury, and that an injunction against that company, enjoining them from cutting and removing the timber in the aforesaid territory, was necessary for the protection of its rights under the contract. That petitioner having fully complied with and performed the contract, and it being impossible to restore it to its former position by reason of said wrongful and illegal conduct on the part of the Summit Lumber Company, it is entitled to and is desirous of having a specific performance of the contract. The premises considered, it prayed that the Summit Lumber Company be cited and that a writ of injunction issue upon its so making the necessary affidavit and bond against the Summit Company, enjoining it from cutting and removing the pine timber measuring ten inches in diameter at the stump on the said sections, situated in Union parish, La., and also from cutting and removing the standing and growing timber in the lands situated within the above-described limits sold and agreed to be conveyed to petitioner. That on final trial the writ of injunction be perpetuated and made mandatory, and that petitioner be decreed entitled to a specific performance of the contract made and entered into by and between the Summit Lumber Company and petitioner on the 21st of March, 1906, as set forth, by decreeing and ordering the lands and timber belonging to the Summit Lumber Company and to which the titles have been found satisfactory and acceptable, of which a full and complete description will appear in the annexed exhibits, be conveyed to petitioner under full warranty deeds by the said defendant, and quitclaim deeds to the timber designated as 'Harrison and Stevenson options,' a full description of which was also annexed, to be ordered executed and delivered by said defendant, and that the rights of way belonging to the Summit Lumber Company within the aforesaid described territory be also decreed to belong to petitioner, and the said company be directed to convey the same to it, and that any other lands or timber to which the titles may be perfected within the territory, and within the time stipulated in said contract, be decreed to belong to petitioner on the payment by it of the contract price. Petitioner prays for judgment against defendant in the sum of seven hundred and fifty dollars, being the amount necessarily expended in abstracting the titles to the aforesaid timber and lands, with interest thereon from judicial demand until paid."

Petitioner prays that its right to demand and recover damages of the said defendant for the active and wanton violation of the aforesaid contract be specially reserved. It prayed for all necessary orders and decrees and for costs, and for full, equitable, and general relief.

On reading the petition, the court ordered that a writ of injunction issue as prayed for, upon plaintiff's executing bond with security in the amount of $10,000 conditioned according to law.

Defendant made application to bond the injunction, which was granted. Thereupon plaintiff appealed suspensively from the order granting said permission to bond to the Supreme Court, which court, on appeal, was affirmed, and the cause remanded to the district court for trial on its merits.

On January 3, 1907, defendant excepted that plaintiff's petition disclosed no legal cause of action. It prayed that its right to sue for all damages be reserved.

On March 18, 1907, under reservation of its exception of "no cause of action" and repleading the same, defendant answered, pleading first a general denial except as thereafter would be admitted. Further answering, it submitted that the written instrument purporting to be a contract entered into between the parties to the litigation was utterly void and no rights accrued to the plaintiff thereunder for the reason that it was in violation of the statutes of the state of Missouri, where it was passed, and was partly to be performed by a foreign corporation (the plaintiff) which had not complied with the statutory requirements authorizing it to transact business in the state. In the event of the court's holding that said written contract was not illegal, null, and void, then, for the reason stated, defendant, further answering, averred that, from the date of the instrument until the expiration of the time limited for the performance of the various stip-

uiations in said instrument contained, it had striven with the utmost good faith to have all the terms and provisions of said instrument carried out completely and fully and within the time limited and according to their letter and spirit; that in reliance upon the good faith and intentions and purposes equally just and honorable on the part of plaintiff, and having under section 4 of said instrument delegated to its representative, W. H. Fields, the function of approving or disapproving of estimates of timber made by parties acting as assistant estimators, the defendant made no investigation into the joint estimates being conducted under section 4, nor had it any facts brought to its notice or attention leading it to believe that a fraud was practiced on it in the estimates made by several of said assistant estimators until about the middle of May, 1906, when notified thereof by W. H. Fields. Defendant further avers that plaintiffs, with design and purpose to defraud defendant out of a large part of the purchase price of its lands and timber, as embraced in said written instrument, did cause and procure fraudulent estimates to be made and reported by some of said assistant estimators, and which, though purporting to include and cover all the merchantable pine timber of the diameter of 10 inches at the stump, did not as a matter of fact account for as much as 50 per cent. thereof.

That by reason of said fraudulent estimates the said Fields declined and refused to approve any of the estimates made by the assistant estimators, and did thereupon endeavor, in virtue of the provisions of section 4 of said written instrument, and on or about June 1, 1906, and on a number of occasions thereafter, to arrange with P. W. Seaman, plaintiff's representative, as nominated in section 4 of said instrument, for a meeting between them at which should be considered said erroneous and fraudulent estimates; that said Seaman neglected and refused to attend any such meeting; that thereupon the said Fields, after he saw that he was unable to arrive at any settlement or agreement with said Seaman, called in A. E. Washburn, of Bastrop, La., as the arbitrator named in section 4 of said instrument, in order that the lawyer might determine upon an estimate which would be correct, just, and fair to both parties to said instrument; that said Fields did then and there tender to said Seaman the services of said Washburn, but that said Seaman, at the instigation of the plaintiff, and in disregard of the terms of section 4 of said instrument, wholly declined and refused to permit said Washburn to arbitrate or adjust any matters of difference existing between said Fields and Seaman over said erroneous and fraudulent estimates; that from the date of the occurrence last related, throughout the remaining period in said instrument named and limited for the completion of all estimates, and the agreement thereon of said Fields and Seaman, or by the decision of said Washburn or such other arbitrator as said Fields and Seaman might agree upon, said Seaman, at the instigation, refused and declined to undertake with the said Fields the settlement or adjustment of the difference between them involving said erroneous and fraudulent estimates; that, in consequence thereof, there was never a final agreement upon any of the estimates either by said Fields or Seaman, or by the decision of either of the arbitrators nominated in section 4 of said written instrument, nor did said Fields and Seaman agree upon or appoint any other person or' persons to act as arbitrator of said differences.

Defendant further averred that it has cut certain of the merchantable pine timber of the diameter of 10 inches or more at the stump from section 12, T. 22 N., R. 1 west, and from section 7, T. 22 N., R. 1 east, and

that it attached to its answer as part thereof a statement of the actual scale of timber. Defendant further averred that owing to the injunction pending against it herein and in case of Union Sawmill Co. v. Summit Lumber Co. it has been unable to cut and scale other of the timber so jointly estimated as aforesaid, but alleges that it has taken the most accurate and reliable method left to defendant or any one else of ascertaining the true and correct amount of merchantable pine timber of the diameter aforesaid, and provided it to be conveyed under the terms of said written instrument; to that end it had secured the services of competent and unprejudiced men, who have measured with tapelines the girth of all timber of the above-mentioned character upon a number of 40's included within the terms of said written instrument, and that with such measurements as a basis, the men so employed had made estimates of the amount of such timber on such 40's, a list of which is annexed to its answer, and that in cases of any doubt or uncertainty the same was resolved in favor of a smaller, rather than a larger, estimate; that, as a result of other estimates made of the remaining portion (excluding the timber embraced in Exhibits 2 and 3) of the timber purporting to have been agreed to be sold under said written instrument, the defendant avers that more than 60 per cent. of such remaining portion was estimated at amounts so grossly erroneous as not to include 50 per cent. of the merchantable pine timber of 10 inches or more in diameter at the stump, whereupon defendant submits that, by reason of said erroneous and fraudulent estimates, the plaintiff is not entitled in good conscience and equity to enforce a performance of said written instrument or any of the terms thereof.

Defendant alleged that no agreement has ever been had between said Fields and Seaman upon any of the estimates made by the assistant estimators, nor have the differences between said Fields and Seaman in respect to said estimates ever been submitted to the arbitration and decision of either of the arbitrators nominated in section 4 of said instrument, nor have such differences been actually arbitrated by said nominated persons, or either of them, or by any person, by mutual agreement of said Fields and Seaman; that the time expressly limited within which said estimates were to be made and agreed upon by said Fields and Seaman, or determined by an arbitrator, has long since passed and elapsed. Wherefore defendant submits that the plaintiff is not entitled to a specific performance of said written instrument. Defendant, denying that it had either committed on its part any material or substantial breach of any of the stipulations of said written agreement, submits that it is expressly provided, under section 14 of said written instrument, that the sum of $10,000 shall be the amount of actual damage to which either the plaintiff or the defendant herein shall be entitled in the event of a breach by the other; and, further, that the plaintiff, by its acts, statements, and admissions generally, has treated the supposed obligations and liabilities created by said written instrument as entitling it, in the event of such breach by the defendant (the Union Sawmill Company) herein, to only the said liquidated sum, and thereby recourse is estopped from claiming or demanding a specific performance of said written instrument. Assuming the position of plaintiff in reconvention, defendant avers, in the event the court should hold the written instrument not to be illegal, null, and void by reason of the fact set forth by defendant, and to be of no effect, (plaintiff) has actively and wrongfully violated and committed a material and substantial breach of the terms and provisions of said written instrument, in that plaintiff caused and procured fraudu-

lent estimates to be made of the timber provided to be sold, under the terms of said written instrument estimated, all as above stated; also in citing, causing, and procuring said Seaman to prevent said Washburn from arbitrating the differences between himself and Fields respecting said estimates, all as above set forth, and in also actively and wrongfully and fraudulently preventing its said representative, Seaman, from making or coming to any agreement, settlement, or adjustment with defendant's representative, Fields, of the difference existing between the two latter over and concerning said fraudulent and erroneous estimates, all as above stated. That by reason thereof, defendant has suffered injury and damage, and is entitled to recover from plaintiff, under section 14 of said written instrument, the sum of $10,000 as liquidated damages, and for which, together with costs of suit, the reasonable fees of attorneys employed by defendant to conduct its defense on the merits, it prays judgment.

Further answering, defendant sets up a second and a third reconvention demand based upon and growing out of the injunction issued here at the plaintiff's instance. The whole of said damages claimed in reconvention amounts to $89,500, for which it prayed judgment, with legal interest from judicial demand.

On August 29, 1907, plaintiff filed a supplemental and amended petition, in which it alleged that, since the filing of the original petition herein which set up the disagreements of the estimators Seaman and Fields, petitioner, after due notice to the Summit Lumber Company of the time and place of hearing, demanded that A. B. Washburn, the first umpire named in the contract sued on in this case, should act as umpire and decide the differences between said Seaman and Fields in respect to the estimates of timber on the lands of the defendant; that the said Washburn, at the instigation of the defendant, refused to act; that thereupon, after due notice to the Summit Lumber Company of the time and place of hearing, plaintiff demanded that J. A. McWilliams, the other umpire named in said contract, should act as umpire and decide said differences; that said McWilliams consented to act and did act, and did on the 26th day of July, 1907, make a formal report on said differences, a copy of which report it annexed and made a part of its petition; that, as appears by a comparison of this report with the report of the estimators employed by Seaman and Fields and annexed to plaintiff's original petition and made the basis of its claim in regard to the timber on the lands which plaintiff demands that the defendant shall transfer to it, there appears to be on said lands an aggregate of 295,000 more feet of timber than is set up in the petition, and that this plaintiff accepts the report of said arbitrator, and is willing to pay the defendant the additional sum of $885 as the purchase price of said timber and lands. Plaintiff proceeded to set out various acts of the defendant in violation of the contract of the 21st of March, 1906, from which it had suffered damage to the amount altogether of $187,000. It then averred that if defendant should refuse to specifically perform its contract, or if the court should hold that its remedy was in damages and not for specific performance, then, and in that event, it was entitled to recover from the defendant a judgment for damages to that amount. It averred, also, that the Arkansas Southeastern Railroad had bound itself to some of the stipulations of the contract mentioned, and had likewise caused it to suffer damages arising from its violation of the same to an extent and in a manner set out, which it is not necessary to state. It prayed that that company be cited and made a

party to the suit. It prayed that the Summit Lumber Company be served with a copy of the supplemental petition to answer the original demand and that contained in the supplemental petition; that it have judgment against it for a specific performance of the contract and for damages in the sum of $187,000, with interest, in the event that specific performance was not and could not be decreed in its favor. It also prayed for judgment against the Arkansas Southeastern Railroad Company, compelling it to perform its obligations, and, if that remedy could not be granted, that it have judgment against it for damages.

On objections urged to the filing of the supplemental and amended petition, it was sustained to the extent of dismissing plaintiff's demand against the Arkansas Southeastern Railroad Company.

Defendant filed an amended answer, in which was contained substantially the same allegations as those of the original answer. It attacked the report made by J. A. McWilliams, one of the arbitrators named in the contract, on the ground that he had incapacitated himself from acting as arbitrator by having previously estimated some of the timber in the capacity of assistant estimator. It denied that McWilliams had estimated any of the timber in controversy since June 30, 1906, and averred that in making the pretended arbitration he had acted wrongfully and fraudulently and in confederation and conspiracy with plaintiff; that he well knew that the estimate of the timber was grossly erroneous and fraudulent, and did not include as much as 50 per cent. of the timber.

On the trial of the case, on motion of defendant, a judgment of nonsuit was entered on its reconventional demand, except as to the item of $10,000 provided for as liquidated damages.

The district court rendered judgment in favor of the plaintiffs for the sum of $10,-000 as stipulated in the contract, and in the further sum of $4,380 as the value and price of the timber cut by defendant from the Futch, Harrison, and McCormick tracts, with legal interest.

Defendant has appealed, and plaintiff has prayed that the judgment be amended so as to allow the full amount set forth and claimed in its amended petition. It (plaintiff) has not appealed, nor does it ask by way of amendment to the judgment that its prayer for a specific performance be granted.

The question of the right to a specific performance is not before the court. The district court has refused to grant plaintiff that relief, and it has acquiesced in that judgment to that extent. Defendant's claim for relief is confined to damages against plaintiff for breach of the contract, and to urging that plaintiffs' demand be entirely rejected, for the reason that in plaintiff's original demand it asked only for a specific performance, with its right reserved to demand damages in another suit. That, having done so, it could not subsequently, through a supplemental and amended petition, inject into this suit a claim for damages, in this way changing its cause of action.

The plaintiff did not seek to demand damages against the defendant for breach of the contract until after defendant had filed a claim for damages against the plaintiff for breach of contract in a reconventional demand contained in its answer.

That reconventional demand remained in the case until the issues involved in the suit were submitted to the court for decision, though most of the reconventional demand was at that time, on defendant's own motion, nonsuited.

The issue of the breach of the contract having been raised by defendant, we think that subject was properly brought into the suit by both sides for examination, discussion,

and decision, even if defendant's contention that plaintiff should not have been allowed to bring that issue into the suit when he had reserved it would have been well taken but for that circumstance.

We do not think that defendant was surprised or injured by having the whole issue as to the breach of the contract by either side brought before the court at one and the same time. The district court in its decision, has restricted the claim for damages for breach of contract to $10,000, the amount stipulated and fixed in the contract as liquidated damages in the fourteenth clause of the contract.

The pleadings and the evidence are in this suit contained in a transcript of 1,100 pages. The greater part of the pleadings and evidence has reference to the demand for a specific performance, and to the demand by each side for damages, which became unnecessary to consider after these demands had been eliminated from the case or modified. They had to be examined none the less, with great trouble and labor thrown upon the court. As matters have taken shape, we have only to consider the question of the breach of contract, and, as incidental thereto, the quantum of damages to be allowed by reason thereof. From the decree rendered by the district court it evidently held the contract to have been breached by the defendant in preventing its enforcement by means of specific performance, by invoking against the plaintiff the time limit fixed for the carrying out of the obligations of the parties. After consideration of the evidence, we cannot say that the court erred in its conclusion on that subject; on the contrary, we have ourselves reached the same conclusion.

We do not find it to be a fact, as charged by defendant, that plaintiffs, with the design and purpose to defraud defendant out of a large part of the purchase price of the land and timber embraced in said written instrument—

"did cause and procure fraudulent estimates to be made and reported by some of the assistant estimators, and which, though purporting to include and cover all the merchantable pine timber of the diameter of ten inches at the stump, did not, as a matter of fact, account for fifty per cent. thereof."

We find that, as a fact, the time fixed as the limit for carrying out the obligations of the parties, to wit, the 30th of June, 1906, expired without the parties having carried out the obligations covered by the contract; that, after that date had passed, the plaintiff was willing to waive the time so far as it was concerned, and to extend the time for the carrying out of the obligations of the parties, but the defendant declined doing so, and the attempted adjustment fell through.

It may be that the plaintiff had failed by the 30th of June, 1906, to carry out some of its obligations under the contract, but in the mass of evidence we have failed to find it so. If we have erred in this respect, the matter can be specifically brought to our attention, with the particular pages of the transcript bearing on the subject, in an application for a rehearing, and the facts can be particularly examined into.

As we are presently advised, the defendant has received the benefit of everything which plaintiff had engaged to do. We think that there would be no necessity for the time limit to have been reached and passed without an adjustment of the rights of the parties under the contract, had the defendant acted with the promptness which the situation called for, under the short time granted for the carrying out of the contract. It was the duty of both Seaman and Fields to have kept advised of the actions of the assistant estimators as they progressed in their work.

Neither Seaman nor Fields had the right to withhold complaints or objections to the work of the assistant estimators in reserve

to so late a day as to make it possible, by then raising complaints and objections, to jeopardize or entirely defeat the whole plan of adjustment. If these assistant estimators were incompetent or careless, and particularly if their work was fraudulent, it was certainly easy to ascertain that fact when the work was done, and not wait. There were means of immediately correcting the particular estimates, and the assistant estimators making them could have been, and should have been, discharged and replaced.

At the time when Fields, Seaman, and Washburn met, the former must have known precisely what work of the assistant estimators had been objected to by him, and he should have limited his demand on Washburn to a revision of that particular work, and no other. He should have joined Seaman in written instructions to Washburn as to what he was called upon to do, and not have left that matter open to successive instructions to him as additional objections would be raised and urged. That, we understand, was what Seaman substantially insisted should be done. The Summit Lumber Company knew at that time what particular work of the assistant estimators had been objected to by Fields, for, in the conference at St. Louis of the representatives of the two companies, they declared that the objections to the work of the assistant estimators were so small as not to call for the services of Washburn as arbitrator under the contract. They evidently did not propose to broaden the revision of their work beyond the objections then made, and by so doing render the completion of the revision impossible within the time limit.

We do not see wherein the conduct of Washburn was open to criticism from either side. He seems to have acted fairly and impartially in the matter. We do not see wherein defendant has been legally injured

or aggrieved by the judgment appealed from. We think the judgment of the district court against the defendant company over and above the sum of $10,000, as for damages as stipulated for in the contract, was well grounded. It simply executes the contract to the extent that the defendant had availed itself of the same, and obtained by executing it prematurely (though with plaintiff's consent) the benefit of the same. We do not think that defendant can equitably withhold payment for timber which it had been allowed to cut and utilize on the strength of a final carrying out of the proposed plan of adjustment between the parties.

We find no good reason for reversing the judgment, and it is hereby affirmed.